# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | | | |
|---|---|---|---|
| GEORGE JOHN BYRD, | ) | | |
| | ) | | |
| Petitioner, | ) | | |
| | ) | | |
| v. | ) | No. | 3:23-CV-067-DCLC-JEM |
| | ) | | |
| JOHNNY FITZ, | ) | | |
| | ) | | |
| Respondent. | ) | | |

## <u>MEMORANDUM OPINION</u>

Now before the Court is a pro se petition in which Petitioner, George John Byrd, a state prisoner, seeks habeas corpus relief under 28 U.S.C. § 2254 from his state court convictions for aggravated rape and aggravated assault that arose from him repeatedly raping his then-wife ("the victim") orally, vaginally, and anally on the night of his birthday celebration [Doc. 1]; *State v. Byrd*, No. E2009-02091-CCA-R3-CD, 2010 WL 4622009, at *1–2 (Tenn. Crim. App. Nov. 15, 2010) ("*Byrd I*"). Petitioner challenges these convictions by asserting that the trial court should not have admitted certain evidence, his trial counsel were ineffective in various ways, and the prosecution failed to disclose certain mental health records from the victim [Doc. 1, p. 6–11, 19–21[1]]. Respondent filed a response opposing the petition [Doc. 14] and the state court record [Doc. 9]. Petitioner did not file a reply, and his time for doing so has passed [Doc. 5 p. 1].

After reviewing the parties' filings and the state court record, the Court finds that Petitioner is not entitled to habeas corpus relief under § 2254. Accordingly, the Court will not hold an

---

[1] It is somewhat unclear whether Petitioner intended these pages, which he labeled "Post-Conviction Grounds for Relief," and which mostly contain restatements of claims Petitioner sets forth elsewhere in his petition, to state claims for relief in this action [*Id.* at 19–21]. Nevertheless, liberally construing the petition in Petitioner's favor, the Court liberally construes these pages to set forth claims for § 2254 relief.

evidentiary hearing, *see* Rules Governing § 2254 Cases, Rule 8(a) and *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007), the petition will be **DENIED**, and this action will be **DISMISSED**.

## I.      BACKGROUND

After Petitioner's then-wife accused him of repeatedly raping her on the night of his birthday celebration, *Byrd I*, at *1–3, a grand jury returned a presentment charging him with three counts of aggravated rape and one count of aggravated assault [Doc. 9-1, p. 5–7]. The testimony at trial indicated that, in the days leading up to the rape incident, Petitioner consumed a large amount of alcohol, cocaine, and an unspecified pill. *Id.* When Petitioner and the victim went to bed after this days-long binge, Petitioner opened his knives and placed them on the nightstand before forcing the victim to perform oral, anal, and vaginal sex for hours [Doc. 9-2, p. 86–98].

The victim's testimony regarding the rape incident at trial was detailed and graphic, and the Tennessee Court of Criminal Appeals ("TCCA") summarized that testimony as follows:

> [The victim] testified that [Petitioner] ordered her to perform oral sex. Byrd then told the victim that he was going to have anal sex with her. She said he held her hands down, pulled down her shorts, and penetrated her anus with his penis. The victim then testified that Byrd grabbed her head again, put it on his penis, and forced her to perform oral sex against her will. Although the victim testified that she was unsure of how many times she went from performing oral sex to being penetrated by Byrd, the record shows that Byrd forced her to perform oral sex at least three times, anal sex twice, and vaginal sex once. None of these sex acts were performed with her consent.

*Byrd I*, at *1. Like the TCCA, the Court declines to summarize all the explicit details of the rape incident from the victim's testimony. *Id.* However, the Court does note that the victim also testified that at one point, Petitioner forced her to perform oral sex right after he forced her to perform anal sex, and this made her vomit [*Id.* at 89]. The victim further testified that Petitioner urinated in her mouth, vagina, and rectum before telling her to remove the wet bedding from the bed, which she did [*Id.* at 92]. The victim additionally testified that she did not cry out for help

because Petitioner told her that if his friends who were in the house with them heard her and came in, Petitioner "would kill all of [them]," and the victim believed him [*Id.* at 91].

After the rape incident, Petitioner and the victim went to sleep [*Id.* at 91]. When the victim awakened, she ran from the house to a ministry, where she called Petitioner's sister and police [*Id.* at 99–100]. She was taken to a hospital, where she told medical providers that she had pain and tenderness in her pubic and anus areas [*Id.* at 100; Doc. 9-3, p. 88–90]. She also told a nurse she feared for her life, and the nurse testified that the victim seemed very scared [Doc. 9-3, p. 91]. The victim additionally told the nurse that that Petitioner placed open knives at the bedside and told her that if his friends heard her, he would kill everyone [*Id.* at 97]. When policed searched the victim's house, they found wet and foul-smelling sheets near the victim's bed [Doc. 9-4, p. 15–17].

In cross-examining the victim during Petitioner's trial, Petitioner's defense counsel questioned her about the timing of an order of protection she had taken out on Petitioner and the fact that, during the time relevant to that order of protection, she was still talking to Petitioner [Doc. 9-3, p. 20–29]. Defense counsel also questioned the victim about, among other things, (1) whether she was jealous that Petitioner's ex-girlfriend had been partying with Petitioner at the victim's house prior to the rape incident; (2) her jail phone calls and visitation with Petitioner after the rape incident; and (3) whether the victim had arranged to have another ex-wife of Petitioner meet her at the jail to have Petitioner choose between them [*Id.* at 55–59].

Also on cross examination, the victim testified about Petitioner obtaining and consuming beer and drugs in the days leading up to the rape incident [*Id.* at 29–35]. Defense counsel specifically asked the victim about her and Petitioner's financial situation, and the victim testified that neither she nor Petitioner were working at the time of the rape incident, and that they received

3

money from Petitioner's mom and sister, as well as government assistance for housing and food stamps [*Id.* at 37–39]. The victim denied that she was aware of the victim compensation fund on the night of the rape incident [*Id.* at 41].

Defense counsel asked the victim about Petitioner's demeanor and drunkenness, including his ability to walk independently, on the night of the rape incident, and the victim affirmed that he was drunk but walked up and down stairs without assistance [*Id.* at 35–37]. Defense counsel also questioned the victim about whether Petitioner had the strength to hold her down even after consuming so many intoxicating substances, and the victim affirmed that he did [*Id.* at 59–60].

Despite an objection from the defense, the trial court allowed the victim to testify on redirect examination that Petitioner obtained money for the alcohol and drugs he consumed in the days leading up to the rape incident by stealing items from Walmart, returning those items for gift cards, and selling the gift cards [*Id.* at 63, 68, 72]. The trial court also allowed a nurse who treated the victim after the rape incident to testify that the victim had told the nurse that she had not cried out due to Petitioner threatening to kill the victim and Petitioner's friends if the friends came to the room, even though the defense objected to that testimony [*Id.* at 94–97].

After the conclusion of the presentation of evidence at Petitioner's trial, the jury convicted Petitioner of all the charges against him [Doc. 9-5, p. 61–62; Doc. 9-6, p. 123–128].

Petitioner then filed a direct appeal of his convictions asserting that (1) the trial court erred by admitting evidence that he made money by stealing items from Walmart and returning them for gift cards that he would sell, as that evidence was irrelevant under Rule 401 of the Tennessee Rules of Evidence [Doc. 9-8, p. 13–14]; and (2) the trial court erred in allowing a nurse to testify that the victim told her that, during the rape incident, Petitioner threatened to kill the victim and his friends in the house if the friends heard the victim, as that evidence was hearsay and did not fall within an

exception to the Tennessee Rule of Evidence prohibiting admission of hearsay [*Id.* at 14–16]. The TCCA affirmed Petitioner's convictions, and the Tennessee Supreme Court ("TSC") denied review. *Byrd I*, at *9.

Petitioner filed a pro se petition for post-conviction relief from his convictions [Doc. 9-15, p. 4–16] and two amended petitions [*Id.* at 20–24; 54–55]. The second amended petition for post-conviction relief, which Petitioner filed through counsel, stated that it contained all grounds for which Petitioner sought post-conviction relief [*Id.* at 55].

The trial court held an evidentiary hearing on the petition, which the TCCA summarized as follows:

> At the post-conviction hearing, co-counsel testified that he joined the case a few days prior to trial at trial counsel's request and that he also handled the direct appeal. Co-counsel recalled that testimony was introduced at trial that the Petitioner had consumed large amounts of drugs and alcohol immediately prior to the offenses and that the Petitioner was unemployed. On redirect examination, the State wanted to question the victim about how the Petitioner could afford to buy the drugs and alcohol in order to elicit the victim's testimony that the Petitioner stole items from Walmart, returned the items for gift cards, and sold the gift cards for cash which he used to purchase the drugs and alcohol. The defense objected, arguing that the evidence was not probative to the issues at trial, that it was not relevant, and that it characterized the Petitioner as "a thief." The State said that the victim's testimony regarding the Petitioner's ability to purchase drugs, their living arrangements, and their lack of employment "opened the door" to the line of questioning. The trial court overruled the motion. Co-counsel raised the issue on appeal, and this court agreed with the trial court. Co-counsel acknowledged that, as noted by this court, Tennessee Rule of Evidence 404(b) was not raised. Co-counsel explained the defense thought arguing that the line of questioning "wasn't especially probative ... was the stronger argument than the attempt to argue the danger of unfair prejudice of it being considered propensity evidence against him."
>
> On cross-examination, co-counsel noted that the Petitioner had not been convicted of any thefts from Walmart. Co-counsel agreed that credibility was a "crucial issue" at trial and that the victim's credibility was bolstered by the introduction of recordings of calls the Petitioner made to the victim while he was in jail. During the calls, the victim discussed the allegations with the Petitioner, and the Petitioner did not dispute the allegations and "appeared to agree that he had done some of those things." However, the Petitioner testified at trial that he had not agreed with the victim but that he was trying to "appease her."

5

Co-counsel agreed the victim's credibility was further bolstered by the fact that immediately after the sexual assault, the victim left the residence, made a complaint, and went for an examination. During the examination, the victim told the sexual assault nurse that she was afraid of the Petitioner and that the Petitioner had threatened her. The sexual assault nurse found physical evidence which corroborated the victim's allegations. The defense acknowledged that the Petitioner and the victim had sex but maintained that the sex was consensual. Co-counsel recalled that the victim's testimony and the recordings of the jail telephone calls showing the Petitioner repeatedly attempted to convince the victim not to appear in court was damaging to the defense.

Trial counsel testified that he was not able to review his file before the post-conviction hearing because the case had occurred thirteen years prior to the hearing, and the file was in storage. Nevertheless, trial counsel recalled that on April 11, 2008, after the public defender's office developed a conflict, trial counsel was appointed to represent the Petitioner in general sessions court. Trial counsel said that the Petitioner maintained that the sex was consensual.

Trial counsel acknowledged that the Petitioner had arranged "a three-way call" with himself, trial counsel, and the victim. During the call, the Petitioner and the victim asked what would happen if the victim did not come to court, and trial counsel responded that he would ask for the case to be dismissed. However, he cautioned that the victim was under subpoena and that he would not advise her not to come to court. Trial counsel acknowledged that the case against the Petitioner was dismissed in general sessions court because the victim did not appear. Trial counsel said that he always informed his clients that if the case were dismissed in general sessions court, the district attorney could nevertheless take it "by presentment to a grand jury."

Trial counsel said he had received and reviewed the discovery. He was "sure" he reviewed the discovery with the Petitioner because he always reviewed the discovery with his clients. Trial counsel said that the defense's theory of the case was that the sex was consensual and that the victim was mad at the Petitioner due to a "typical" marital disagreement. Trial counsel hired an investigator, Barry Rice, who "scoured the country" looking for the individuals who were at the party. Trial counsel gave Rice "partial names" of Paschal and Bowman; however, Rice was unable to locate them.

Trial counsel said that although the Petitioner acknowledged he had been drinking alcohol and using drugs before the offenses, the defense wanted to show that the Petitioner did not have the financial ability to buy the drugs and alcohol. Therefore, trial counsel cross-examined the victim regarding how the Petitioner could afford to pay for the drugs and alcohol. Trial counsel acknowledged that his cross-examination "inadvertently opened the door to where they got the money when [the victim] said, 'Well, he went and stole stuff.'" Trial counsel did not know about the

thefts until the victim mentioned them at trial. Trial counsel noted that the Petitioner had not been charged or convicted of the thefts, so no proof supported the victim's allegations.

Trial counsel recalled that prior to trial, the parties had agreed that the last page of the order of protection, which described the Petitioner's holding a knife to the victim's throat on an occasion prior to the offenses, would not be submitted to the jury. Trial counsel acknowledged that he "messed up" when cross-examining the victim because he mentioned that the jury had not "seen the entire order of protection." He explained that he made the statement while "we [were] right in the heat of talking back and forth and everything." On redirect examination, the prosecutor argued that trial counsel "open[ed] the door" to the entire statement being shown to the jury, and the trial court agreed. Regardless, trial counsel asserted that he did not think the admission of the last page of the order of protection would have "swayed" the jury.

Trial counsel said that prior to trial, he and the Petitioner discussed whether the Petitioner should testify. Trial counsel noted, however, that the Petitioner never believed he would face trial because he thought the victim would not come to court. After the State rested its case-in-chief, trial counsel asked the Petitioner if he wanted to testify. Trial counsel advised the Petitioner that he had the right to testify but that he did not have to testify. The Petitioner decided to testify.

When asked about preparing the Petitioner to testify, trial counsel acknowledged that he did not "s[i]t him down and sa[y], Okay, here's our prep for your testimony." However, they discussed "stuff" and talked about the defense being that the sex was consensual. Regarding cross-examination, trial counsel stated that he always told his clients not to elaborate, to give "yes or no" answers, and to "be very careful what you say."

Trial counsel said that some of the Petitioner's family members wanted to testify regarding the victim's "past acts," such as the victim's "bragging about having anal sex ...." Trial counsel stated that he did not call them as witnesses because their testimony would have been redundant to the victim's testimony and could have exposed the defense to damaging cross-examination. Trial counsel called as a witness the Petitioner's ex-wife, Kimberly Derry, who testified that the Petitioner was a good person and that he had never done anything "forcible" to her.

On cross-examination, trial counsel agreed that he had filed numerous pretrial motions and was successful in excluding proof of multiple prior bad acts the Petitioner committed against numerous women, some of which resulted in warrants against the Petitioner. Trial counsel acknowledged that the proof at trial consisted primarily of the victim's testimony versus the Petitioner's testimony, which made their credibility crucial. Trial counsel opined that the victim was a credible witness and that her trial testimony was "extremely graphic" and detailed. Further, the

investigating officer testified that the victim's allegations were corroborated by "the scene and her demeanor." Additionally, the sexual assault nurse who examined the victim found physical evidence to corroborate the victim's testimony. Trial counsel agreed that in light of the proof of the offenses, the alleged thefts from Walmart "kind of pale[d] in comparison" and opined that "the Walmart incident was [not] much, if any, issue at all." Trial counsel acknowledged that there was evidence the Petitioner prevented the victim from testifying at the preliminary hearing and that he tried to keep her from testifying at trial.

The Petitioner testified that trial counsel began representing him in general sessions court after another attorney was removed due to a conflict. The Petitioner did not recall whether trial counsel visited him in jail but acknowledged trial counsel met with him prior to each court appearance. They discussed what would happen if the case were dismissed in the general sessions court. The Petitioner believed the case would "just be over with," but he "knew that there was a chance that the State could pick it up ...." The Petitioner said that after the case was dismissed in general sessions court, he went to prison because of parole violations. Afterward, he was "re-indicted ... for more serious charges."

The Petitioner said that he and trial counsel did not discuss trial strategy. He explained that they thought the victim would refuse to come to court, and the case would be dismissed. The Petitioner recalled a telephone call he had with trial counsel, and the victim during which trial counsel told the victim that if she failed to come to court, the charges against the Petitioner would be dismissed, and the case would be over.

The Petitioner again maintained the defense theory was that the sex was consensual. The Petitioner told trial counsel that the victim had made "similar allegations against ex-boyfriends before" and that she said "one of her exes did something to her daughter." To the Petitioner's knowledge, trial counsel did not investigate the victim's prior allegations.

The Petitioner acknowledged that trial counsel may have visited him at the detention facility. The Petitioner did not review discovery with trial counsel, and he never listened to any recordings of jail telephone calls until they were played for the jury during trial.

The Petitioner said that he wanted Paschal and Bowman called as witnesses at trial. The Petitioner asserted that the victim was "real possessive of" him and that she was angry because Paschal, the Petitioner's ex-girlfriend, was at the residence. Additionally, during the Petitioner's birthday party, the victim and Paschal talked

about Paschal's receiving criminal compensation after someone was convicted of raping her.

The Petitioner opined that Paschal and Bowman should not have been difficult to find. Although he did not know their "physical address," he gave trial counsel a description of how [to] drive to their residence. The Petitioner also thought that the probation office had Paschal's address and that the public defender's office had Bowman's address.

The Petitioner said the first time trial counsel mentioned that the Petitioner might need to testify was on the second day of trial after the recordings of the jail telephone calls were played for the jury. The Petitioner asserted that trial counsel did "[a]bsolutely nothing" to prepare him to testify and that the State's cross-examination of him "did not go well." The Petitioner explained he testified on cross-examination that he ran from the police because he was "nervous" and "paranoid." However, the "real reason" he ran was that he was on parole and was not supposed to be at that address. Additionally, the State cross-examined him about a prior theft conviction in Knox County, and he responded that he had not been convicted of any thefts. He explained that he thought the State was asking if he had been convicted of "stealing" anything. As impeachment, the State introduced proof that the Petitioner had been convicted of cashing a "rebate check" that was sent to his then-wife, Kimberly Derry. The Petitioner said that discussing potential cross-examination issues with trial counsel prior to his testimony would have been helpful.

*Byrd v. State*, No. E2021-00562-CCA-R3-PC, 2022 WL 1766348, at *2–5 (Tenn. Crim. App. June 1, 2022) ("*Byrd II*").

The post-conviction court denied the petition for post-conviction relief [*Id.* at 60–75]. In doing so, the post-conviction court addressed arguments for post-conviction relief from all of Petitioner's post-conviction petitions [*Id.*].

Petitioner appealed the denial of his post-conviction petition on the grounds that (1) trial counsel failed to "adequately prepare for the case and advise [] Petitioner"; (2) "[t]rial counsel opened the door to let in multiple pieces of testimony and evidence that were detrimental to [] Petitioner"; (3) Petitioner testified that trial counsel did not review discovery with him; (4)

Petitioner testified that trial counsel did not prepare him to testify for his defense; and (5) trial counsel failed to investigate potential witnesses and prior false allegations the victim made against other people, despite Petitioner's requests that he do so [Doc. 9-17 p. 9–10].

The TCCA affirmed the denial of Petitioner's petition for post-conviction relief, and the Tennessee Supreme Court declined review. *Byrd II*, at *1–5.

Petitioner next filed the instant § 2254 petition [Doc. 1].

## II.    STANDARD OF REVIEW

The Court's review of the habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which allows a federal court to grant habeas corpus relief on any claim adjudicated on the merits in a state court only where that adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established" United States Supreme Court precedent; or (2) "resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented." *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

This Court may grant habeas corpus relief under the "contrary to" clause where the state court (1) "arrive[d] at a conclusion opposite to that reached by [the Supreme Court] on a question of law; or (2) decide[d] a case differently than the Supreme Court on a set of materially indistinguishable facts." *See Williams v. Taylor*, 529 U.S. 362, 405 (2000). The Court may grant habeas corpus relief under the "unreasonable application" clause where the state court applied the correct legal principle to the facts in an unreasonable manner. *Id.* at 407.

But even an incorrect state court decision is not necessarily unreasonable. *See Schriro*, 550 U.S. at 473 ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold") (citing *Williams*, 529 U.S. at 410). Rather, this Court may grant relief for a

claim decided on its merits in state court only where the petitioner demonstrates that the state court ruling "was so lacking in justification that there was an error understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Also, before a federal court may grant habeas corpus relief, the petitioner must have first exhausted his available state remedies for the claim. 28 U.S.C. §2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to have "fairly presented" each federal claim to all levels of the state appellate system to ensure that states have a "full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990) (citing *Justices v. Boston Mun. Court v. Lydon*, 466 U.S. 294, 302–03 (1984)). In Tennessee, presentation of the claim to the TCCA satisfies this requirement. Tenn. S. Ct. R. 39.

If a prisoner never presented a claim to all state court levels and a state procedural rule now bars presentation of the claim, he procedurally defaulted that claim. *Coleman v. Thompson*, 501 U.S. 722, 731–32, 750 (1991). In such circumstances, the claim is technically exhausted but procedurally defaulted. *Gray v. Netherland*, 518 U.S. 2074, 2080 (1996); *Coleman*, 501 U.S. at 732; *Jones v. Bagley*, 696 F.3d 475, 483 (6th Cir. 2012) ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted"). In Tennessee, petitioners may generally proceed only through one full round of the post-conviction process, and Tennessee imposes a one-year statute of limitation on such actions. Tenn. Code Ann. § 40-30-102(a) (one-year limitation period), § 40-30-102(c) ("one petition" rule).

On federal habeas review, the district court may review a procedurally defaulted claim only where the prisoner can show cause for that default and actual resulting prejudice, "or . . . that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 749–50. Errors of post-conviction counsel cannot generally serve as "cause" to excuse a

11

procedural default. *Coleman*, 501 U.S. at 753–53. But the Supreme Court established an equitable exception to this rule in *Martinez v. Ryan*, holding that the inadequate assistance of post-conviction counsel or the absence of such counsel may establish cause for a prisoner's procedural default of an ineffective assistance of trial counsel claim under certain circumstances. *Martinez v. Ryan*, 566 U.S. 1, 9, 17 (2012). The Supreme Court has described the *Martinez* exception as follows:

> [The exception] allow[s] a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim;" and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (quoting *Martinez*, 566 U.S. at 13–14, 16–17). This exception, commonly referred to as the *Martinez* exception, applies in Tennessee. *Sutton v. Carpenter*, 745 F.3d 787, 792–95 (6th Cir. 2014).

An ineffective assistance of counsel claim that "has some merit and is debatable among jurists of reason" is substantial. *Abdur'Rahman v. Carpenter*, 805 F.3d 710, 713 (6th Cir. 2015) (citing *Martinez*, 566 U.S. at 14). Conversely, "a claim is insubstantial when 'it does not have any merit,' 'is wholly without factual support,' or when 'the attorney in the initial-review collateral proceeding did not perform below constitutional standards.'" *Porter v. Genovese*, 676 F. App'x 428, 432 (6th Cir. 2017) (quoting *Martinez*, 566 U.S. at 15–16).

The *Martinez* exception does not apply to a claim of ineffective assistance of trial counsel that a petitioner raised in the initial-review collateral stages and defaulted on appeal. *See, e.g.*, *Middlebrooks v. Carpenter*, 843 F.3d 1127, 1136 (6th Cir. 2016) (stating that *Martinez* did not apply "because those claims were raised and rejected on the merits by the initial postconviction court, and ineffective assistance of counsel on post-conviction appeal cannot

12

establish 'cause' to excuse [petitioner]'s procedural default, which occurred only in the Tennessee Court of Criminal Appeals"). And *Martinez* does not excuse a petitioner's failure to develop a factual record for a claim, even where he attributes that failure to the ineffective assistance of his post-conviction counsel. *Shinn v. Ramirez*, 142 S. Ct. 1718, 1735 (May 23, 2022).

## III.    ANALYSIS

As set forth above, in his petition for § 2254 relief, Petitioner seeks habeas corpus relief from his convictions based on claims that (1) the trial court erroneously admitted certain testimony; (2) his counsel was ineffective in numerous ways; and (3) the prosecution failed to turn over the victim's mental health records. The Court will address these claims in turn.

### A.    Wrongly Admitted Testimony

Petitioner first claims that (1) the trial court erred in allowing the nurse who examined the victim after the rape incident to testify that the victim told her that Petitioner threatened to kill the victim and Petitioner's friends, if the friends heard her [Doc. 9-3, p. 96–97]; and (2) the trial court erred in allowing the victim to testify that Petitioner obtained money by stealing items from Walmart, returning those items to Walmart for gift cards, and then selling the gift cards, because that testimony was inadmissible under Rule 404(b) of the Tennessee Rules of Civil Procedure [Doc. 9-3, p. 68, 72; Doc. 1, p. 6–7].

Petitioner exhausted his claim that the trial court improperly admitted the nurse's testimony in his direct appeal[2] [Doc. 9-8, p. 14–16]. However, the TCCA found that this testimony was

---

[2] Petitioner also asserted in his direct appeal that the admission of this evidence violated the Confrontation Clause [Doc. 9-8, p. 15–16]. But Petitioner does not raise that argument in his § 2254 petition [Doc. 1, p. 6], nor does he set forth any allegation or argument that the TCCA's denial of this Confrontation Clause claim was unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented. As such, even if Petitioner intended to bring the same Confrontation Clause claim he exhausted in his direct appeal in his § 2254 petition, he would not be entitled to relief.

13

admissible as proof of a prior consistent statement from the victim to rehabilitate her credibility, in response to the defense's attacks on the victim's credibility. *Byrd I*, at *6–9.

Petitioner did not exhaust his claim that the trial court's admission of the victim's testimony regarding the Walmart thefts violated Rule 404(b) in his direct appeal [*See generally id.*] or in his post-conviction appeal [Doc. 9-17]. Petitioner did raise an argument that the trial court erred in admitting the victim's testimony regarding the Walmart thefts in his direct appeal [Doc. 9-8, p. 4, 13–14], and he asserts in his § 2254 petition that this argument was sufficient to assert the Rule 404(b) argument [Doc. 1, p. 7–8]. But the only theory that Petitioner presented in support of his claim challenging the trial court's admission of the Walmart theft testimony in his direct appeal was that the trial court erroneously admitted this evidence because it was irrelevant under Rule 401 of the Tennessee Rules of Civil Procedure [Doc. 9-8, p. 13–14]. He did not raise any argument regarding this evidence being inadmissible under Rule 404(b) [*See*, *generally*, *id.*]. Accordingly, the TCCA specifically noted that he waived any Rule 404(b) argument in its opinion affirming his convictions. *Byrd I*, at *6.

For Petitioner to have exhausted a claim he seeks to bring under § 2254, he must have presented "the same claim under the same theory" to the state courts. *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987); *see also Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009) (finding constitutional claim must be presented in federal court under the same theory as presented in state appellate process). Thus, Petitioner's assertion that he exhausted his claim that the trial court's admission of the Walmart evidence violated Rule 404(b) in his direct appeal is without merit.

Moreover, to the extent that Petitioner argues that he did not procedurally default his claim challenging the admission of the Walmart evidence because "it was mentioned and brought up in post conviction" [Doc. 1, p. 7], the record establishes that Petitioner did not raise this claim to the

TCCA in his post-conviction appeal [Doc. 9-17], as he must have done to exhaust the claim. *Manning*, 912 F.2d at 881. And Petitioner cannot now exhaust this claim with the state courts. Tenn. Code Ann. § 40-30-102(a) (one-year limitation period), § 40-30-102(c) ("one petition" rule).

Thus, while Petitioner exhausted his claim that the trial court erred in admitting evidence of his threat to kill the victim and Petitioner's friends during the rape incident, he procedurally defaulted his claim that the admission of the victim's testimony regarding his Walmart thefts violated Rule 404(b). And Petitioner has not set forth cause and prejudice to excuse this default.

But regardless of any default, Petitioner's claims challenging the TCCA's evidentiary rulings are not cognizable in this action, as these claims allege only violations of state evidentiary rules. *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012) ("In general, alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review." (citing *Collier v. Lafler*, 419 F. App'x 555, 558 (6th Cir. 2011))); *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007) ("[A] state court's violation of its own evidentiary law does not, *ipso facto*, provide a basis upon which a federal court may grant habeas relief."). Further, Petitioner does not assert that any of the evidence he contends the trial court wrongfully omitted was so "prejudicial that its admission . . . rendered his entire trial fundamentally unfair, which denied him due process under the Fifth and Fourteenth Amendments," such that his claims challenging the trial court's admission of evidence would be cognizable herein. *Bey*, 500 F.3d at 519–20. Nor would the record support any such argument, as the evidence Petitioner challenges through these claims was not so prejudicial that its admission rendered his trial unfair, especially in light of the victim's credible, detailed, and graphic testimony of Petitioner's acts during the rape incident and the corroborating evidence introduced at trial.

Accordingly, Petitioner is not entitled to relief under § 2254 based on his claims that the trial court wrongly admitted testimony.

## B.     Ineffective Assistance of Counsel

Liberally construing the petition in Petitioner's favor, he alleges that his trial counsel were ineffective for:

(1)    failing to call the two individuals who were in the same house as Petitioner and the victim on the night of the rape incident as witnesses at trial;

(2)    not calling an expert or rebuttal witness regarding Petitioner's intoxication at the time of the rape incident;

(3)    failing to inform him of the prosecution's evidence;

(4)    failing to independently investigate the scene and witnesses of the crime;

(5)    not "properly advis[ing him regarding] the case";

(6)    failing to request a continuance;

(7)    failing advise him regarding "any plea bargains";

(8)    causing Petitioner to be charged with more serious charges after telling the victim not to appear in court;

(9)    failing to object to incorrect statements at trial that Petitioner and the victim were estranged or divorced at the time of the rape incident;

(10)   failing to discredit the victim based on the district attorney pressuring her to testify, her mental health issues, and the victim's knowledge of the victim compensation fund;

(11)   failing to secure a mental health evaluation for Petitioner;

(12)   failing to speak to him on the day he was sentenced and until his appeals were denied, such that Petitioner "had to file with the Board of Professional Responsibility in order to get him to send [Petitioner] a letter"; and

(13)   sleeping at one point during his trial.

[Doc. 1, p. 9–12, 17–21].

16

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This includes the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687. A petitioner has the burden of proving ineffective assistance of his counsel. *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A party asserting an ineffective assistance of counsel claim must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires a claimant to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

17

The Supreme Court has emphasized that a claimant must establish both prongs of a claim for ineffective assistance of counsel to meet his burden, and if either prong is not satisfied, the claim has no merit. *Strickland*, 466 U.S. at 697. Moreover, a habeas petitioner alleging ineffective assistance of counsel that he exhausted with the state courts bears a heavy burden, given the "doubly deferential" review of such a claim under § 2254(d)(1). *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

Notably, Petitioner did not exhaust most of the ineffective assistance of counsel claims he brings in his § 2254 with the TCCA, and he cannot now do so. Respondent contends that some of these claims do not fall under *Martinez*, as Petitioner defaulted them in the post-conviction appeal [Doc. 14, p. 32, 34, 36]. In support of this assertion, Respondent cites a TSC case providing that "Tennessee appellate courts may only consider issues that were not formally raised in the post-conviction petition if the issue was argued at the post-conviction hearing and decided by the post-conviction court without objection." *Holland v. State*, 610 S.W. 450, 458 (Tenn. 2020).

As the Court noted above, although Petitioner's last amended petition stated that it contained his only claims for post-conviction relief [Doc. 9-15, p. 55], the post-conviction court still addressed claims he raised in other petitions in its order denying relief [*Id.* at 60–75]. This complicates the Court's analysis of which of Petitioner's claims for § 2254 relief may fall under *Martinez*, which does not apply to an ineffective assistance of trial counsel claim raised in a post-conviction petition but defaulted on appeal. *Middlebrooks v. Carpenter*, 843 F.3d 1127, 1136 (6th Cir. 2016). Based on *Holland* and *Middlebrooks*, the Court finds that Petitioner abandoned on appeal only his post-conviction claims the post-conviction court addressed on the merits, but Petitioner did not raise to the TCCA. *Middlebrooks*, 843 F.3d at 1136 (stating that *Martinez* did not apply "because those claims were raised and rejected on the merits by the initial postconviction

18

court, and ineffective assistance of counsel on post-conviction appeal cannot establish 'cause' to excuse [petitioner]'s procedural default" of a claim in an appeal); *Holland*, 610 S.W. at 458.

The Court now will address Petitioner's ineffective assistance of counsel claims in turn.

### 1.    Failure to Call Fact Witnesses

Petitioner claims that his counsel were ineffective for not calling the two individuals who were in the house with him and the victim at the time of the rape incident as witnesses at his trial and asserts that, as these people were in the room next to Petitioner and the victim during the rape incident, "their testimony might have changed things" [Doc. 1 p. 9].  Petitioner exhausted this claim with the TCCA [Doc. 9-17 p. 10].  The TCCA found that Petitioner was not entitled to relief for this claim because he failed to present the witnesses he alleged his counsel should have presented at trial at his post-conviction evidentiary hearing.  *Byrd II*, at *7 (citing *Black v. State*, 794 S.W. 2d 752, 757 (Tenn. Crim. App. 1990).

Petitioner has not alleged that the TCCA's denial of this claim was an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented.  To the contrary, the record supports the TCCA's denial of this claim, as it contains no evidence of what these witnesses' testimony regarding the rape incident may have been, and it is apparent from Petitioner's own phrasing of this claim that he is unsure whether testimony from these missing witnesses would have made any difference in the result of his trial.  *See Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007) (finding that where a petitioner did not present any evidence of what an uncalled witness's testimony might have been, beyond the petitioner's own assertions, the petitioner had not shown that his counsel's failure to call that witness had prejudiced him).  And while Petitioner also blames his post-conviction counsel for failing to present these witnesses, as set forth above, *Martinez* does not excuse a petitioner's failure to develop a factual

19

record for a claim, even where he attributes that failure to the ineffective assistance of his post-conviction counsel. *Shinn*, 142 S.Ct. at 1736.

Accordingly, Petitioner is not entitled to relief under § 2254 for this claim.

**2.      Failure to Call Intoxication Witness**

Petitioner next challenges his counsel's failure to call expert and/or "rebuttal" witnesses to dispute the testimony that he was able to rape the victim in the manner she alleged despite having "that many substances in [his] system" and his lack of sleep in the previous days [*Id.* at 11]. Petitioner did not exhaust this claim with the TCCA, and he appears to blame his post-conviction counsel for this failure [*Id.*]. Again, however, Petitioner has not set forth any expert or other witness testimony suggesting that he was physically unable to execute the rapes of the victim in the manner she alleged. *Clark*, 490 F.3d at 557. And under *Shinn*, Petitioner bears the responsibility for his post-conviction counsel's failure to develop a record to support this claim. *Shinn*, 142 S.Ct. at 1736. As such, Petitioner is not entitled to relief under § 2254 for this claim.

**3.      Informing Petitioner of State Evidence**

Petitioner also alleges that his counsel failed to "inform [him] of State's evidence" [*Id.* at 17]. But while the post-conviction court addressed a substantively similar claim in its opinion denying Petitioner relief [Doc. 9-15, p. 73–74], Petitioner did not present this claim to the TCCA [Doc. 9-8; Doc. 9-17], and *Martinez* therefore cannot excuse this procedural default, which occurred on appeal. *Middlebrooks*, 843 F.3d at 1136. Moreover, Petitioner does not set forth any other reasons for the Court to excuse this procedure default, nor does he provide any factual support for this claim [*Id.*]. Accordingly, Petitioner procedurally defaulted this claim, and he is not entitled to relief under § 2254 based on this conclusory allegation.

### 4. Investigation

Petitioner next claims that his counsel failed to "independently [investigate] the crime scene and witness statements" [Doc. 1, p. 17]. Again, however, although the postconviction court addressed this claim in its opinion denying Petitioner relief [Doc. 9-17, p. 73–74], Petitioner did not raise this claim for relief to the TCCA [Doc. 9-8; Doc. 9-17]. Thus, *Martinez* cannot excuse that default, *Middlebrooks*, 843 F.3d at 1136, and Petitioner does not otherwise set forth cause and prejudice to excuse his procedural default of this claim. Additionally, even if Petitioner could excuse his default of this claim, he would not be entitled to relief, as he provides no facts to support the Court finding that his counsel's alleged failure to investigate the crime scene or witness statements was deficient performance that prejudiced him.

Moreover, to the extent that Petitioner seeks to assert the claim that his counsel were ineffective for not presenting evidence of similar allegations the victim made against others, which he exhausted in his direct appeal, the TCCA found that this claim had no merit because of his failure to present any proof of those alleged prior allegations. *Byrd II*, at *7. And Petitioner has not alleged or shown that the TCCA's denial of this claim was an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence in the record. To the contrary, the record supports the TCCA's denial of this claim, as Petitioner has never presented proof of any similar allegations the victim made against other people, and therefore he has not demonstrated that his counsel was deficient in not finding and/or presenting any such evidence.

As such, Petitioner is not entitled to relief under § 2254 based on this claim.

### 5. Properly Advising Petitioner

Petitioner also makes a general allegation that counsel "failed to properly advise [him] of [the] case" [Doc. 1, p. 17]. In his post-conviction appeal, Petitioner similarly alleged that his

counsel failed to "adequately . . . advise [] Petitioner" [Doc. 9-17, p. 9].  However, it is unclear which facts in Petitioner's post-conviction appellate brief supported this allegation [*Id.* at 9–10], and the TCCA did not address this general allegation on the merits.  *Byrd II*, at *6–7.

It is likewise unclear what factual support Petitioner relies upon to support this allegation in his § 2254 petition [*Id.* at 17].  And the Court declines to speculate as to what advice Petitioner's trial counsel could have provided that would have had a reasonable probability of changing the result of his trial.  To the extent that this general allegation refers to Petitioner's allegation that his counsel failed to advise him as to plea offers, the Court addresses that claim below.

As such, Petitioner is not entitled to relief under § 2254 for this claim.

### 6.      Continuance

Petitioner next claims that his counsel failed to seek a continuance despite stating that he did not have sufficient time to prepare for trial [*Id.* at 17].  However, Petitioner did not exhaust this claim with the TCCA [Doc. 9-8; Doc. 9-17] and does not set forth cause and prejudice to excuse this procedural default.  Petitioner also does not set forth any factual basis from which the Court could find that counsel's decision not to seek a continuance rose to the level of deficient performance, or that he suffered any prejudice from counsel's failure to do so.  Accordingly, Petitioner is not entitled to relief under § 2254 based on this allegation.

### 7.      Plea Offers

Petitioner also claims that his counsel failed to advise him regarding plea offers [Doc. 1, p. 17].  However, Petitioner did not exhaust this claim with the TCCA [Doc. 9-8; Doc. 9-17], and he does not set forth any reason for the Court to excuse this procedural default.  Also, Petitioner has not presented any evidence that the prosecution offered him a plea, such that the Court could find that counsel acted deficiently with regard to any such plea offer in a manner that caused him

22

prejudice. The only evidence the Court has located in the record regarding plea offers was from Petitioner's counsel, who testified at the post-conviction evidentiary hearing that he did not believe that any plea offer was made [Doc. 9-16, p. 38]. Accordingly, Petitioner is not entitled to relief under § 2254 for this claim.

### 8. Telling Victim Not to Appear in Court

Petitioner further claims that his counsel caused the prosecution to charge him with more severe charges by telling the victim not to appear in court [Doc. 1, p. 17]. But Petitioner did not exhaust any such claim with the TCCA [Doc. 9-8; Doc. 9-17], and he does not set forth any cause or prejudice to excuse this default. *Hugueley v. Mays*, 964 F.3d 489, 498–99 (6th Cir. 2020) (providing that a petitioner relying on the *Martinez* exception "must still demonstrate that the ineffectiveness of his post-conviction counsel was the 'cause' of his default" (quoting *Trevino v. Thaler*, 569 U.S. 413, 423 (2013))).

Moreover, while the record contains ample evidence that Petitioner tried to keep the victim from coming to court [Doc. 9-6, p. 28; Doc. 9-5, p. 17; Doc. 9-16, p. 56], as well as evidence that one of Petitioner's attorneys told the victim that if she did not show up to general sessions court, the attorney would ask for the charges to be dismissed [Doc. 9-16, p. 21–22, 27–34], and Petitioner testified that his attorney told the victim that if she did not appear in general sessions court, the charges would be dismissed [*Id.* at 63], Petitioner does not point to any evidence in the record to support the finding that his counsel told the victim not to appear in court, and the Court has not located any such evidence [*See*, *generally*, Doc. 9-16]. And to the extent Petitioner challenges his attorney's act of having the charges against him in general sessions court dismissed based on the victim failure to prosecute, the record does not contain any evidence to support the Court finding that this dismissal caused the state to charge Petitioner with more serious offenses.

23

Accordingly, Petitioner procedurally defaulted this claim, and he is not entitled to § 2254 relief for this claim.

### 9. Statements Regarding Victim and Petitioner Being Divorced or Estranged at the Time of the Rape Incident

Petitioner next claims that his counsel were ineffective for not objecting to statements indicating that he and the victim were divorced or estranged at the time of the rape incident [Doc. 1 p. 17]. But Petitioner did not raise this claim with the TCCA [Doc. 9-8; Doc. 9-17] and does not set forth any grounds for the Court to excuse this default. Moreover, given the overwhelming evidence against Petitioner, the Court cannot find that any objection regarding Petitioner and the victim's marital status had a reasonable probability of changing the result of the trial. Accordingly, Petitioner procedurally defaulted this claim, and he is not entitled to § 2254 relief for this claim.

### 10. Discredit Victim

Petitioner also claims his counsel were ineffective for not discrediting the victim's credibility by presenting evidence that (1) the victim was picked up from a mental hospital to testify and (2) the prosecution had pressured the victim to testify in a number of ways, including payment from the victim compensation fund, of which Petitioner claims the victim was aware at the time of her reporting of the rape incident [Doc. 1, p. 18]. While these are arguably different claims, the Court addresses them together due to Petitioner pleading them together [*Id.*].

First, Petitioner did not raise any of these claims to the TCCA [Doc. 9-8; Doc. 9-17] and he does not set forth any grounds for the Court to excuse his default of these claims. Moreover, Petitioner acknowledges that his counsel did not know that the prosecution allegedly picked up the victim from a mental hospital to testify [Doc. 1, p. 18], and has not set forth any evidence that his counsel knew that the prosecution had allegedly pressured the victim to testify at his trial in the

24

manners he alleges in his petition,[3] and nothing in the testimony from one of Petitioner's attorneys at the evidentiary hearing regarding Petitioner's post-conviction petition suggests that they did [Doc. 9-16, p. 4–57]. Additionally, the record demonstrates that, at Petitioner's trial, Petitioner's counsel asked the victim about her knowledge of the victim compensation fund on the night of the rape incident, and the victim denied having any such knowledge [Doc. 9-3, p. 39–41].

Accordingly, Petitioner procedurally defaulted these claims, and he is not entitled to § 2254 relief for these claims.

### 11. Mental Health Evaluation

Petitioner further claims that his counsel were ineffective for failing to obtain a mental health evaluation for him [Doc. 1, p. 18]. But Petitioner did not raise this claim to the TCCA [Doc. 9-8; Doc. 9-17], and does not set forth any grounds for the Court to excuse this procedural default.

Petitioner also does not allege or point to any evidence in the record that his counsel had any knowledge of his alleged mental health issues, such that the Court could fault counsel for not obtaining a mental health evaluation for him. And the Court has not located any evidence in the record to support a finding that Petitioner's counsel were aware of any such issues [Doc. 9-16].

Accordingly, Petitioner procedurally defaulted this claim, and he is not entitled to relief under § 2254 for this claim.

---

[3] At the post-conviction hearing, Petitioner's counsel testified about a phone call between himself, Petitioner, and the victim in which they discussed the police trying to find the victim to try to get her to come to court [Doc. 9-16, p. 33–34]. But the context shows that this police pressure for the victim to appear in court related to the charges against Petitioner in general sessions court [*Id.*], not in the criminal trial. As such, it does not appear that this testimony is relevant to this claim. But even if it were, it is not evidence of undue pressure on the victim, such that the Court could find that it might have impacted the victim's credibility in a manner that had a reasonable probability of changing the result of Petitioner's criminal court trial.

25

### 12. Communication with Petitioner

Petitioner further claims that his counsel were ineffective for failing to communicate with him on the day of sentencing and until his appeals were denied [Doc. 1, p. 20]. But Petitioner did not raise this claim to the TCCA [Doc. 9-8; Doc. 9-17], and does not set forth any grounds for the Court to excuse this procedural default. Petitioner also does allege or point to any evidence in the record that any lack of communication with his counsel prejudiced him. Accordingly, Petitioner procedurally defaulted this claim, and he is not entitled to relief under § 2254 for this claim.

### 13. Sleeping

Petitioner also appears to allege that one of his attorneys was ineffective because "at one point during [the] trial [he] look[ed] over at one of my lawyers … and he was napping." [Doc. 1, p. 20]. But Petitioner did not raise this claim to the TCCA [Doc. 9-8; Doc. 9-17], and does not set forth any grounds for the Court to excuse this procedural default. Petitioner was represented by two attorneys at trial. He does not allege at what point in the trial this allegedly occurred or how this prejudiced him. Accordingly, Petitioner procedurally defaulted this claim, and he is not entitled to relief under § 2254 for this claim.

### C. Mental Health Records

Petitioner's last claim is that the prosecution failed to disclose mental health records, including records showing that the prosecution took the victim from a mental hospital to testify in front of the grand jury, and that this evidence "could have been favorable" to Petitioner's case, as it related to the victim's credibility [Doc. 1, p. 18, 21]. The Court liberally construes this claim to allege a violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963). However, Petitioner did not exhaust such a claim with the TCCA [Doc. 9-8; Doc. 9-17], and he does not allege that state suppression of this evidence caused this procedural default, such that the Court could excuse it.

*Henley v. Bell*, 487 F.3d 379, 388 (6th Cir. 2007) (providing that a petitioner who has procedurally defaulted a *Brady* claim satisfies the cause and prejudice test by showing that "the reason for his failure to develop facts in state-court proceedings was the State's suppression of the relevant evidence, and that the suppressed evidence is material for *Brady* purposes." (citing *Banks v. Dretke*, 540 U.S. 668, 691 (2004)) (internal quotation marks omitted). Nor does Petitioner set forth any other reason for the Court to excuse the default.

Moreover, even if Petitioner had alleged that the state suppressed the victim's mental health records in a manner that caused his procedural default of this claim, he would not be entitled to § 2254 relief for this claim. The Due Process Clause of the Fourteenth Amendment requires that the state disclose to criminal defendants "evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed." *California v. Trombetta*, 467 U.S. 479, 485 (1984) (citing *Brady*, 373 U.S. at 97). "Even in the absence of a specific request, the prosecution has a duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt." *Id.* at 485 (quoting *United States v. Agurs*, 427 U.S. 97, 112 (1976).

To establish a *Brady* violation, a petitioner must show "that the prosecutor suppressed evidence; that such evidence was favorable to the defense; and that the suppressed evidence was material." *Gillard v. Mitchell*, 445 F.3d 883, 894 (6th Cir. 2006) (citation omitted). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Youngblood v. West Virginia*, 547 U.S. 867, 870 (2006) (internal quotation marks omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987) (internal quotation marks omitted).

Petitioner has not set forth any evidence, beyond his own self-serving assertions, that the prosecution took the victim from a mental health hospital to have her testify against Petitioner, or that the prosecution withheld any of the victim's mental health records. But even if the Court assumes this is true, it does not create a reasonable probability that presentation of such evidence would have changed the result of Petitioner's trial. Rather, the record establishes that the victim's testimony about the rape incident was graphic, detailed, and credible, and that this testimony was also corroborated by evidence at the scene, the examination of the victim after the incident, and the victim's prior consistent statements.

Accordingly, Petitioner is not entitled to § 2254 for this claim.

IV.     CERTIFICATE OF APPEALABILITY

The Court must now consider whether to issue a certificate of appealability ("COA"), should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas corpus proceeding only if he is issued a COA, and a court may issue a COA may only where a Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on a procedural basis without reaching the underlying claim, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Petitioner has not made a substantial showing that any of his claims regarding admission of evidence, ineffective assistance of counsel, or the victim's mental heal records amounted to a violation of his constitutional rights, and reasonable jurists would not debate the Court's finding that Petitioner procedurally defaulted the claims that he did not exhaust with the TCCA.

28

Accordingly, a **COA SHALL NOT ISSUE**.  Also, the Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous.  Fed. R. App. P. 24.

## V.  CONCLUSION

For the reasons set forth above, the petition for § 2254 relief will be **DENIED**, and this action will be **DISMISSED**.  A COA shall **NOT** issue.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

**ENTER:**

s/Clifton L. Corker
United States District Judge